Good morning. Good morning. May it please the Court, I'm Jan Weir. I represent the appellant, Organic Food Bar. The issue here is whether or not summary judgment was appropriate. I can't hear you very well. Sorry. Can you hear me now? If you could talk louder, it would help. Okay. The issue here is whether summary judgment was appropriate below on an issue of fact, genericness, in view of the considerable conflict in evidence that was presented in the party's motions. What the district court did was acknowledge, for example, that Premier Nutrition's survey, the validity of it, or he acknowledged that there was substantial problems with it, agreeing that our objections to their surveys had merit, but then said, well, that goes, but our objections actually go to weight. Well, the minute you say that there's now an issue of weight, the issue switches over to a jury. Maybe what he meant to say is it really doesn't prove anything that is helpful to you. Let me give you an example of what I mean. This is what I've been wrestling with the last few days. Suppose I hold up this little packet of facial tissue and I go to a mall and I ask 100 people, what would you call this, and they say they'd call it Kleenex. That may or may not prove that Kleenex has become generic, that the trademark Kleenex has become a generic term. It doesn't prove that this isn't also facial tissue. And that's what it seems to me your survey did. You show people a snack bar and a lot of people will call it a lot of things, but it doesn't prove that it's not also generically an organic food bar. So your survey really doesn't have much logical probative force on the issue that we're worried about. Well, I think it does in the sense that if you have a significant number of respondents saying that that tissue paper is Kleenex, then that shows that consumers are using the term generically. They're using Kleenex generically. Yes, but that works if you've got something like Kleenex and the question is whether it has become generic. This isn't that problem. And the best I can tell from your survey, your survey never asks the question, therefore leaves unanswered the issue of what people think of when they see who they think of when they see an organic food bar. Do they think of your company or not? That question was never asked and never answered. And I think you're making a very interesting point. The quick response to it is, is that who they think of goes to secondary meaning perhaps. But it also highlights the difference between what's referred to as a Teflon study and a thermo study. Yes, but Teflon was the Kleenex example. Exactly. But that's not this case. Exactly. So Teflon survey, even assuming it's relevant, which I doubt, but even assuming it is, your survey doesn't address the question of what people mean when they say organic food bar. I mean, whose press sawdust are we talking about? It doesn't show that they think of your company. Well, and again, I think that goes to secondary meaning. But it doesn't. I mean, organic food bar is about as generic as it comes. I mean, it's an organic food bar. I mean, it's just I can't think of anything that's more generic than organic food bar or energy food bar. I mean, it's just plain generic unless somehow you can show that it conjures up your company. Well, and I, again, I. Rather than the type of press sawdust it is. I wouldn't. You don't need to go there. It's your client. Yeah. But the, again, I understand Your Honor's point. The issue here is, I think, first, the threshold issue is, is this what the product is? And there you show, you ask people, you show them it and say, what is this, essentially? And that's what we did. The problem is, is that if you lead them and give them leading questions, then that's subject to criticism, too. So you say, look at this. What is it? If I go to a mall and I point to the movable staircase and I say, what's that? I'm likely to get an answer. It's an escalator. That's the generic term for it. In this case, they said protein bars, nutrition bars, energy bars. That's what people are referring to these products as. Do I have the logic of this right? Let me see. I think I just understood what you said. The logic of the challenge is, just because Kleenex may be turning into a generic word for facial tissue, that doesn't mean that facial tissue isn't generic. Proving that Kleenex is used generically doesn't prove that facial tissue isn't used generically. But I think what you're saying, and what I'm doing is trying to educate myself to see if I understand this. You're saying that may be so, but if you hold up the pack of facial tissue all over the mall and whatever words people can think of to call it, they never use the word facial tissue, that means facial tissue may seem like generic words to us, but they really aren't the way the English language is used. Nobody calls this thing facial tissue. It does not, in fact, refer to what it is. Yes, that's correct. The issue is what's in the mind of consumers. And so that's the essential question. So I've got the logic right? Oh, yes, you have. Yes, you have. That may hurt me, but that is the logic. It may hurt or help, but I just want to make sure I understand it. The issue is what's in the mind of consumers. That's the threshold question. So you show them it, ask them what is this, what is it, and they tell you what they think it is. If they don't use, for example, facial tissue, which is a tough example for me, if they don't use it, it's possible facial tissue is descriptive. I have never heard anyone ever call it facial tissue. When I look at Sam's to buy Kleenex or toilet paper or whatever it is that I'm looking for, and they have these names, I have to look at the plastic pack to figure out what's in there. Yes, and I don't think the law precludes using terms that are like descriptive and may even be almost comically descriptive. My problem is that organic food bar sounds like a parody of a generic name, as generic as it could possibly be. But I think what your questionnaire is to show is it's so much a parody that no one actually calls the thing that. Correct. That would be one example of what I'm talking about. I would have thought you were aiming to show the opposite, that is, whenever anybody thinks of this genre of stuff, they think organic food bar. And I think that, no, that's the premier's position. Premier's position is that whenever anybody sees any of these products, if I'm walking through Whole Foods or if I'm walking through the- They don't think of you. I mean, they don't think of your company. That's the whole, you haven't answered the who question, and that's what this is all about. Well, but that is secondary meaning. What is genericness? Who is secondary meaning? Well, it's not really, it seems to me. I mean, you can't get a monopoly, you can't get a lock on a generic term, right? Absolutely. I mean, you just can't. You cannot appropriate. So if organic food bar is simply a generic description of a type of food bar, you can't get a lock on it. If it is in fact that way and consumers perceive it to be that way, but the fact that you look at something and say this looks like it's generic doesn't answer the question. It may look to some people, I mean, your survey shows it may look to 1% or 1.9 or whatever it was, percent of the people like it's an organic food bar. To other people, it looks like an energy bar. To other people, it looks like a protein bar. The point being that all looks, I mean, where does that get you? It just is generic. Well, it's, you know, our client, it's obviously not a fanciful arbitrary mark. The question is we're close. The case law says the difference between genericness and descriptiveness is oftentimes very close. And this case may very well be teetering right on that threshold and maybe a judge would say I think it's not on the threshold, it's further over on the threshold. The question is, is that even if it's on that fine line, even if it's on the threshold, the issue is, well, what does the evidence say? Were we able to present evidence that said people use the term nutrition bar, protein bar, to say what these are or do they use organic food bar to generically say what it is? And if the evidence, if there's a conflict in that evidence, then that goes to the jury. It's not up for judges, the district court judge, to say, well, I have this perception of the mark and therefore I'm going to infer from my perception what consumers think. The issue is the state of mind of consumers. When people go into stores, I would infer from your questionnaire study that they ask for something other than where do you have your organic food bars? They ask where do you have your energy bars or something like that. Correct. That's what the survey would say. If you walked into a store and asked the clerk, that's essentially what the point of the survey is, is that what would you ask for? Where are the nutrition bars? Where is the deodorant? Where is the milk? If somebody walked into a store and said do you have an organic food bar, would a shopkeeper say, no, we don't stock those, but we have other brands of energy bars? Can we infer anything about that? If possible. In this case, the organic food bar is the number one organic energy bar product being sold. It's sold in Trader Joe's. It's sold in health food stores. So it's sold in a sort of unique market where people are looking for that particular type of food. I'm a little unfamiliar with this stuff. We don't have a Trader Joe's or any of those natural crunchy food stores in Fairbanks, and I never eat this stuff, so back it up a little for me. But that's sort of exactly the point here is that there are a group of consumers that particularly focus on particular types of organic health foods. And the question is what's in the state of mind of those consumers? What are they thinking? Do they associate it with our client? If you have these record sales, if you have high volume of sales, and all you're doing is calling it organic food bar and that's your generic term, how does it explain the inference to draw is that people are clearly recognizing it as a brand because they know what to go back and buy. If I go to the store and I ask for Kleenex and he gives me the store brand, I might say, no, no, no, I like the Kleenex brand. Exactly. That's what I meant, Kleenex. And I'm wondering if anyone would think that organic food bar was a brand, that it was from a particular company, as opposed to just being an energy bar. And, again, I believe that goes to the issue of secondary meaning as to who they associate with, but there is sufficient evidence here of secondary meaning due to the circumstantial evidence of high sales, high advertising. Again, the inference that should have been drawn in our favor on summary judgment was. What you get back to is just what Judge Reimer asked you. The Pentax company can't say we're the only camera company and nobody else can call the thing they make to take pictures a camera, because camera is a generic term and maybe organic food bar is too because it sounds so extremely organic in its name. But still, the issue is customer perception. So someone could say, you know, come up with a name, and it's hard for me to come up with a camera example off the top of my head, but I want one of those, I want a look-through thing, a look-through recording device that, you know, gives me a sheet, you know, describe what it is. If somebody goes to the store and says, I want organic carrots, could that be a trademark? I think it depends, but probably not. This product says organic raw food bar. Right. I don't understand why you could, why I want organic raw carrots would be generic, but this can be a trademark. Because I think it's the combination of the totality of the mark. In reality, what does food bar mean? Realistically, food bar is anything. So maybe it's longer than it's wide? Yeah, you know, who knows? So you combine up, you're saying organic food bar. You know, what's interesting in this case is that before my client adopted it, nobody did that. Nobody went around and said, well, you know, as you see there, big, bold, branded, typeface, organic food bar. Nobody did that. When they, when Premier was coming out with their product, they were going to call it Soleil bar. And then they go to a trade show, they see my client's product, and then all of a sudden, big, bold, typeface print, organic raw food bar. And then they went around and told everybody that they were the number one selling bar. Clearly trying to associate themselves with us. The only reason somebody would do that is because they recognize that there's some kind of association with consumers about our product. We submitted evidence that our salespeople went into Costco and some of these other stores, and they said, they told them to get out because you guys were here last week. And we said, no, we weren't. Oh, yes, you were. You organic food bar people were here last week, and it was Premier. So the fact that there's confusion, the fact that they copied, the fact that we have high sales shows and creates a reasonable inference that there is an association with our company. So there is evidence that supports that inference. The and I think I'm running out of time. I've got three seconds. Maybe I'll keep that for rebuttal if I can. Maybe you're over time, but thank you, Mr. Weir. Oh, sorry. Mr. Fattahi. May it please the Court. My name is Cameron Fattahi. I'm representing Premier Nutrition, Inc. I believe Your Honors have it correct as the district judge did. Counsel, I'm confused about a part of this case. As you heard me say, I think organic food bar sounds like a parody of generic naming. However, nobody seems to call the things that. They call them energy bars and sometimes protein or nutrition bars. As far as I can tell, they mainly call them energy bars. If nobody actually calls it that, maybe it's not generic. Why doesn't that have some probative value? Judge Kleinman, people do call this organic food bar. Where is the evidence for that? We submitted evidence that other in the media. We submitted three articles where people from there was a CEO of a company that mentioned that. OK. Why isn't there a genuine issue of fact about what the generic name of the thing is that can be inferable from this survey? Your adversary did because their survey shows nobody at the mall calls the thing an organic food bar. It's just that they conducted the wrong survey. Just because a survey comes in, it doesn't necessarily mean that the district judge's hands should be tied behind his back and accept any conclusion their expert wants to reach. I think that's a little overstated. All I'm asking about is for summary judgment, we're supposed to look at what reasonable inferences can be drawn. And what I'm asking is, could a jury draw a reasonable inference that if nobody calls the things in this survey organic food bars, and they don't believe any of your witnesses and they believe all their witnesses, could a jury draw the inference that organic food bar is not a generic term? Because it's just not used that way in English. I believe reasonable jurors could not draw that inference. A few people did call it organic food bar, but this is not. Again, it's because their survey asked the wrong question. Why is it wrong? Why is it wrong? I don't know if you understood my point. But if the inference can be drawn, that would suggest that the question is not the wrong question. If the inference cannot be drawn, that would suggest that it is the wrong question. First of all, they led the people in the survey to go shy away from responding to their question by saying organic food bar. They showed a picture of their products. No, I'm looking at question 1A in the survey. What term would you use to refer generally to the type of product they showed you? But in doing that, first of all, they did not conduct a proper survey. They say they conducted a thermos survey. In the thermos survey, you verbally describe the nature of the product. And then you ask that type of a question. Here they showed a photograph of their product. In big letters it says organic food bar. There's a TM notice next to it. If I'm a survey respondent seeing that, that's a clue to me that maybe I shouldn't be using that term because they say it's their trademark. And they want me to use a common name. It's not in a survey like that. We should not be after finding out which term is the most popular generic name. There could be multiple generic names for a product names. I think their question 2 was is there any other term or terms you might use to refer generally to this type of product? So if there are multiple names, it looks like they're fishing for them all. Well, again, if that name in their survey was not mentioned as much as energy bar or nutrition bar, that doesn't prove the point that people associated that name with a single source. That doesn't even prove the point that that term is not generic. You know, you can you can there are multiple. I wonder if I can make things. I wonder if it doesn't. Oh, let me back up for just a second to what you said about the unfair way they presented it in order to cause people not to say organic food bar. Could you I'm looking at the plan here and I just want to make sure I find the right sentence. And I can't find where it says that that's how they did it. Yeah. In their excerpts of record page 91. That's appendix G page 92. Actually, if you read the report of Mr. I'm looking at 92. It says Xerox of candy bar wrapper. And the page before that, it says photo of organic food bar shown to single bar self. That is a photograph of their product shown to some of the respondents. And then the next picture, it may not be very clear, but there is a photo of product shown to multi bar selling. It has a whole bunch of brands, including, again, their product. Which is they have a law clerk who likes these things and he call them call them cliff bars. I guess that's like saying Kleenex. Cliff bar is a brand. Again, just going back, if I try to come up with examples, there are multiple generic names for a single type of a product. Pants, trousers and even slacks. If if you did a survey and very few people call them trousers, most people would call it pants. That doesn't mean that trousers is generic. Even if you would get more technical. I'm sitting here. I see this picture here. Picture of water. What if somebody wanted to say, I am going to call that water pouring device. And I'm not going to allow that and allow anybody else to use it. And they conduct a survey. I would hazard a guess that almost nobody would call it water pouring device. Yet that is very generic. So maybe the better survey that they the better question they should have asked is to ask them. What do you think of organic food bar? This term. Is it a brand name or is it a generic name? Our survey was done that way. Eighty eight percent of people found it to be generic. Now there are many pieces of other evidence that we submitted from their organic food bars. Own use of the term organic. I'm not sure whether that shows that their survey is both impeachable and weaker than your survey, or whether it shows that their survey can't give rise to the inference. Well, the survey is a separate piece of evidence. The other types of evidence that we submitted, which they could not really impeach properly. They just said they didn't believe they made arguments against our evidence, but they did not come forth with any other piece of evidence to negate our evidence. Their own use. I mean, there is no dispute here that food bar is generic. Even organic food bar has used it all over their website in a generic manner. So how could food bar be generic and then a food bar that is organic not be generic? I guess if a purified water company labels its product with the name pure, that would be generic. Well, if they use that as a brand name, pure. Pure water. If they say pure water, that would be generic. If they just use the brand as a brand, pure, maybe that wouldn't be generic. How can yellow cab be a trademark? You're taking a cab and you're using the color yellow, but we know that that's a trademark. That was found to be a trademark because it, again, referred to a particular company. Not everybody looking at or hearing the word yellow cab thinks that it refers to all kinds of cabs. It referred to cabs of a particular company. Organic food bar, again, on their website, they say to establish organic food bar as the finest and best tasting food bar in the world. That's on Supplemental Excerpts of Record 162. On SER 163, it says, their website, these days energy and food bars are like a box of chocolate. And there are other examples. They call their product, they put it in the category of energy or food bar. Yet a food bar that is organic because it's made of organic ingredients has to be their exclusive property? Not so. So we submitted dictionary definitions. Judge Guilford was very careful in analyzing the overall mark as a whole. Yes, he looked at the dictionary definitions, just like in Filipino Yellow Pages it was done. In Sergei Sentra's case it was done. But, again, at the end he said the ultimate test is considering the mark as a whole. We submitted evidence in media usage. We submitted competitor's usage. Rebar is a product that has been introduced, has been selling since 1999. Yet that's before organic food bar. They claim they started selling this product in 2001. Despite this rebar evidence and the declaration of Jocelyn Bates, which has gone uncontradicted, all they say is that it's biased. That doesn't create a genuine issue of material fact. Rebar has been around since 1999, before then. Yet throughout this whole case and in this appeal they say they are the first and exclusive user of the term organic food bar. Rebar has in big letters it says nutritious organic food bar on their packaging. We have other evidence of two other products at least. And they keep saying they coined the term. We have submitted evidence of the use of the term organic food bar in patents, in three patents. One of them at least was applied for and issued before organic food bar came on the scene. Multiple patents used the term food bar going back to 1997, sorry, 1970s I believe. Yet they say they coined the term food bar. How so? Then the PTO has refused their application on the basis of genericness. Yes, that's not binding on this Court, but it is entitled to some weight. The PTO has a, it's called the Trademark ID Manual. It's a manual of acceptable identification of goods and services. By its definition, everything there is a generic description of all goods and services on this earth. And they do, it does include, the PTO's ID Manual, Trademark ID Manual includes this term, food-based organic food bars. That's an acknowledgement by the PTO that organic food bars is generic. They also adopted that definition, that identification in their own application. Further evidence of genericness. So they just conducted the wrong kind of survey. Their survey does not answer that, you know, if, if, if, I mean, their survey basically shows that's one of the multiple alternative generic names. Yet all of those names are generic. It does not answer, they didn't ask the question point blank from, from respondents, what do you think of this term organic food bar? Is it generic? A common name? Or is it a brand name? Again, going back to the Filipino Yellow Pages, the test is what are you versus who are you? Organic food bar clearly answers the question of what are you. When you hear, people don't necessarily have to have seen this product to know what it is. But when you hear the term organic food bar, it is generic. I could come up with not, not too many better examples of being generic. Again, the district court did not weigh the evidence. The only time, and in fact, the district judge stated that on summary judgment, the court is not supposed to weigh the evidence. So he was not just casual about that, Judge Guilford. He took almost six months to render his decision after oral argument. If he made that comment that it goes to the weight of the evidence, it was, again, within the context and within the framework of summary judgment. He was very clear about that issue. Then we have the alternative ground of secondary meaning. That was argued and briefed to the district court. They did not submit any competent evidence to show that even if not generic and if it's descriptive, that the mark has acquired secondary meaning. And on that alternative ground, this summary judgment could also be acquired. All right. Thank you, Mr. Frattari. Thank you, Your Honor. Do you have any further questions? No. Do you have anything for Mr. Blatt? Okay. I think we have no further questions. Thank you very much, counsel, both of you. The matter just argued will be submitted in the Court of Appearance. I'm just asking for that. Thank you.
judges: Rymer, Kleinfeld, Silverman